UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

EDWARD IBANIBO,

                              Plaintiff,                   Civ. No. 14-cv-2303 (KM)

v.
                                                           OPINION

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.


**KEVIN MCNULTY, U.S.D.J.:**

Edward Ibanibo brings this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 1383(c)(3) to review the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Title II Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed.

## I.   BACKGROUND

Ibanibo filed an application for DIB on April 28, 2008, alleging that since April 5, 2007, he has been unable to engage in substantial gainful activity because he suffers from coronary artery disease, hypertension, ischemia, and other cardiac impairments. (R. 276) [1] His application was denied on September 18, 2008. (R. 47) Ibanibo then requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ James Andres on April 15, 2010. (R. 21-44). Ibanibo testified at the hearing. (*Id.*) On April 29, 2010, Judge Andres issued a decision finding that Ibanibo was not disabled. (R. 11-17) Ibanibo appealed the denial, but the Appeals Counsel declined to review it,

---

[1] "R." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (Dkt. No. 5)

rendering it a final decision. (R. 1-6) Ibanibo then filed his initial petition for review in this court.

On July 18, 2012, District Judge Claire C. Cecchi issued an opinion that affirmed in part and remanded in part the ALJ's decision. (R. 324-40) Pursuant to the Court's remand order, the Appeals Council directed the ALJ to consider Ibanibo's diagnosis of ischemic heart disease at Step 2 and his diagnoses of hypertension, a post-repaired aortic aneurysm, and ischemic heart disease, at Step 3 of the five-step evaluation process (*see infra* Section II.A.). (R. 274, 324-40) On remand, Ibanibo was provided with an additional hearing, which occurred on March 26, 2013. On May 24, 2013, ALJ Richard West issued a second unfavorable decision. (R. 274-80) On June 27, 2013, Ibanibo appealed the denial. (R. 268-70) On March 13, 2014, the Appeals Council denied the appeal, rending Judge West's decision final and ripe for review. (R. 262-67) (In the remainder of this opinion, "ALJ" refers to Judge West unless otherwise specified.)

## II.   DISCUSSION

To qualify for Title II Disability Insurance Benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). The claimant must show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

### A. Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review by the district court of an ALJ's decision to award or deny benefits

necessarily incorporates a determination of whether the ALJ properly followed this five-step process. The steps may be briefly summarized as follows:

> Step One: Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

> Step Two: Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

> Step Three: Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

> Step Four: Determine whether, despite any severe impairment, the claimant retains the "residual functional capacity" to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

> Step Five: At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and residual functional capacity, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). That "is more than a mere

scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

## B. The ALJ's Decision

The ALJ concluded that Ibanibo was not disabled. His determinations are as follows:

At Step One, the ALJ found that Ibanibo did not engage in substantial gainful activity from April 5, 2007, the onset date of his alleged disability, through December 31, 2012, his last insured date. (R. 276)

At Step Two, the ALJ found that Ibanibo suffered from the following severe impairments: "coronary artery disease; hypertension; status post repair of a dissecting aortic aneurysm; and a history of ischemic heart disease." (*Id.*) The ALJ noted that this finding regarding Ibanibo's ischemia directly followed from the Court's order, stating:

In consideration of the District Court's direction that the undersigned consider whether the claimant had a severe impairment involving ischemic heart disease, the undersigned finds this impairment severe. The undersigned notes that a May 30, 2007 nuclear stress test was positive for ischemia. However, a subsequent December 11, 2008 stress test was negative for ischemia. As such the undersigned finds that the claimant did suffer from a severe impairment of ischemia.

(*Id.* at 276-77)

At Step Three, the ALJ determined that Ibanibo's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1. (*Id.* at 277)

At Step Four, the ALJ found that Ibanibo had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). "Although the claimant suffers some limitations due to his impairments, and as a result, his capacity to perform work is affected," the ALJ found, he nonetheless retains the residual functional capacity to perform "the exertional demands of a full range of sedentary work which requires lifting and carrying objects weighing up to 10 pounds; frequently lifting and carrying objects weighing less than 10 pounds; and standing and walking for two hours and sitting for up to six hours in an eight-hour day." (*Id.* at 279)

At Step Five, the ALJ found that Ibanibo was capable of performing past relevant work as an income specialist and financial consultant because that work did not require any activities beyond his residual functional capacity. (*Id.* at 280) Such a finding, as noted above, requires the ALJ to conclude that a claimant is not disabled. Here, the ALJ ultimately found that Ibanibo was not disabled from April 5, 2008, through December 31, 2012, within the meaning of the Social Security Act, and consequently was not entitled to Disability Insurance Benefits. (*Id.*)

### C. Ibanibo's Appeal

Ibanibo contends on appeal that the ALJ's decision is not supported by substantial evidence. He argues in particular that the ALJ erred at Step 3 by failing—in violation of this Court's prior order—to consider whether his severe impairment of ischemia, whether individually or in combination with his other impairments, was medically equivalent to one of the Commissioner's listed impairments. (Pl. Br., Dkt. No. 8, at 16) This oversight, Ibanibo says, fatally undermines the ALJ's conclusion at Steps 4 and 5 that he possessed the residual functional capacity to resume his past relevant work.

### D. Analysis

Ibanibo does not appear to contest the ALJ's determination at Step 3 that none of his impairments, considered individually, were medically equivalent to any of the Commissioner's listings. Ibanibo does maintain, however, that the ALJ failed to adequately analyze his impairments in combination. In support, Ibanbo cites *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149 (3d Cir. 2008).

The claimant bears the burden of proving that his impairments, whether individually or collectively, equal or meet those listed in Appendix 1. However, "if a claimant's impairment does not match one listed in Appendix 1, the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Torres*, 279 F. App'x at 151-52; *see also* 20 C.F.R. § 404.1526(b). The Third Circuit has stated that it is the ALJ's "responsibility ... to identify the relevant listed impairment(s)" and "develop the arguments both for and against granting benefits." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n. 2 (3d Cir. 2000) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)).

Ibanibo insists that that the combined effects of his impairments are medically equivalent to the Commissioner's listings, but he does not specify how. *See Cosby v. Comm'r of Soc. Sec.*, 231 Fed. Appx. 140, 146 (3d Cir. 2007) (affirming denial of plaintiff's appeal where she failed to "argue or even suggest

which listing the ALJ should have applied, nor [did] she point to any medical evidence ignored by the ALJ that would show that [her] impairments medically equaled one of the listings.") For example, Ibanibo critiques the ALJ's decision for not offering "analysis of plaintiff's ischemic heart disease under paragraph 4.04A1, A2, A3, A4 or A5." (Pl. Brief, Dkt. No. 8, at 20). However, he points to no medical evidence that either demonstrates medical equivalence with those subsections or that was otherwise overlooked by the ALJ. *Rivera v. Comm'r of Soc. Sec.*, 164 Fed. Appx. 260, 262 (3d Cir. 2006) ("The claimant must provide sufficient medical evidence in step three to show that her impairment is equal in severity to a listed impairment, but need not identify the relevant listings.")

The ALJ is "not require[d]...to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) Rather, the Third Circuit instructs district courts to determine, in light of the decision as a whole, whether the ALJ considered the appropriate factors at Step Three. *Id.* (finding that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the plaintiff] did not meet the requirements for any listing"). *See also Burnett*, 220 F.3d at 120 (mere "conclusory statements" are "beyond meaningful judicial review").

The ALJ here sufficiently developed the record and explained his findings at Step Three, permitting meaningful review. The ALJ's discussion of the objective medical evidence as well as the weight he gave to the opinion of Ibanibo's treating physician were thorough and sufficient. The ALJ expressly states that "specific consideration was given to the listings in sections 4.04 and 4.10" and that "there is no evidence which demonstrates [the] criteria" of those listings. (R. 277) Substantial evidence supports that finding. As noted by the ALJ, although Ibanibo was diagnosed with a descending thoracic aortic dissection in April 2007, his condition materially improved after surgery. (R. 278) "His pain was immediately relieved postoperatively and his blood pressure

7

became manageable." (*Id.*) He was also able to walk and ambulate without assistance, and a chest CT performed following the surgery did not indicate any abnormalities. (*Id.*) Although a May 30, 2007 nuclear stress test was positive for ischemia, "a Holter monitor was negative for arrhythmia" and "[a] 2D echocardiogram showed normal LV function." (*Id.*) During a follow-up exam, Ibanibo's cardiac specialist, Dr. Preet Randhawa, found that he was only suffering "mild symptoms" and that his coronary artery disease was "mild-to-moderate." (R. 195) Moreover, a December 11, 2008 stress test was negative for ischemia. (R. 246)

The ALJ's decision in this case is thus very distinguishable from the decision reviewed in *Torres*. There, the ALJ's analysis under Steps Two and Three consisted of only "one cursory paragraph." *Torres*, 279 F. App'x at 152. By contrast, the ALJ here cited the evidence and "set forth the reasons for his decision[]" that Ibanibo's impairments were not, individually or collectively, medically equivalent in severity to one of the listed impairments. *Id.*

Accordingly, I find no error in the ALJ's Step Three analysis. The ALJ elucidated an evidentiary basis, grounded in record evidence, for his determinations regarding the listings. To require more would be to disregard the Third Circuit's instructions, *see Jones* 364 F.3d at 505, and "elevate form over substance." *Padilla v. Comm'r of Soc. Sec.*, 2010 WL 2346650, at *5 (D.N.J. June 9, 2010).

## III.    CONCLUSION

For the foregoing reasons, the ALJ's decision is **AFFIRMED**.

An appropriate order will issue.

_____
**KEVIN MCNULTY, U.S.D.J.**

Date:  August 17, 2015